MARGARET DILLIARD et al., Plaintiffs, *v.* VILLAGE OF NORTH HILLS, Defendant.

Supreme Court, Special Term, Nassau County, August 12, 1949.

*George Morton Levy* and *Edward Neary* for plaintiff.

*J. Oakey McKnight* and *Ward R. Burns* for defendant.

*Henry Root Stern, Jr.,* for Boy Scouts of America, Nassau County Council, *amicus curiæ.*

HILL, J. This is an action to declare invalid a zoning ordinance adopted by the board of trustees of the defendant, Village of North Hills, on May 21, 1932, and thereafter amended on October 14, 1933, and on April 21, 1938.

The particular provision of the zoning ordinance complained of is the last paragraph of article III " The area prescribed for Residence A Districts is two (2) Acres."

The village of North Hills is located in Nassau County, the westerly boundary thereof being Hyde Park Road, which is within a few hundred feet of the easterly boundary of New York City. The village has an area of approximately 1,500 acres owned principally by persons of substantial means (as shown by the exhibits), who maintain private residences in plots averaging approximately 50 acres.

The plaintiffs' property comprises 48.81 acres lying in the southeasterly part of the village.

In the past few years and especially since the late war, many homes have been built around the perimeter of the village on plots averaging 10,000 square feet in area. The plaintiffs claim that the zoning ordinance is unconstitutional and void, in that it deprives them of their property without due process of law, and such circumstances in effect take plaintiffs' property for public use without just compensation and that the restrictions (2 acres) bear no substantial relation to public health, safety and morals as required by law. The second allegation only will be considered. The question of eminent domain does not arise in this case — only one of police power.

The free enjoyment of property is limited. Unrestrained liberty leads to anarchy. Government is the right of the sovereign to prescribe regulations demanded by the conditions for the protection of all. This led the early settlers in Massachusetts to regulate the keeping of gunpowder by laws granted in 1714, " for the better securing and safe keeping of the Public Stock of Gun Powder and preventing the great loss and danger by casualties befalling the same. And considering the imminent hazard of keeping Powder in Store-Houses with other Goods and Merchandises; or in or near dwelling Houses; the Government have thought it necessary * * *."

Zoning in the past twenty-five years has grown in extent and favor. Every large city and most small ones, including many villages, hamlets and towns, have adopted some form of property regulation. All must come within the broad police power of the State in order to be valid. Each regulation must come within the rule that it have some substantial relation to public health, safety and morals. " ' The police power, so difficult to define, but so frequently invoked, is confined to such reasonable restrictions and prohibitions as are necessary to guard public health, morals and safety, and to conserve public peace, order and the

general welfare. Regulations and ordinances within such general definitions are valid. * * * Compensation for such interference with and restriction in the use of property is found in the share that the owner enjoys in the common benefit secured to all.' " (*People ex rel. Publicity Leasing Co.* v. *Ludwig,* 218 N. Y. 540, 543.) In *Mugler* v. *Kansas* (123 U. S. 623, 661) the court said: " courts are not bound by mere forms, nor are they to be misled by mere pretences. They are at liberty — indeed, are under solemn duty — to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

Research on the part of counsel and the court has failed to find a similar case in the Federal or State courts of this country. One case was decided by the highest court of the State of Massachusetts, where the question of 1-acre plots for residential purposes was considered (*Simon* v. *Town of Needham,* 311 Mass. 560). This restriction was there found to be reasonable.

Bassett has long been recognized as an authority on zoning. He writes at pages 86–87: " In states where the enabling act authorizes zoning for density of population the practice has increased of providing a density regulation for each district and especially for each residential district. This may be done by stating the allowable number of families per acre of land. No prospect of trouble arises in reducing the allowable number to three or four families per acre. It is not difficult to show the court that such a regulation has a substantial relation to fire risk, light and sunlight, circulation of air, annoyance from noise, and danger of contagion. The substantial relation ceases, however, when unnecessarily large building plots are required. The question sometimes arises whether these density regulations can be used to preserve the surroundings of large estates by preventing the building of nearby houses on comparatively small lots. For instance, a regulation requiring two acres for each family might be a protection to surrounding large estates, but in case of a lawsuit could the municipality show that a house for one family on two acres of land contributed to the safety and health of the community to a greater degree than such a house on one acre of land? Three families to the acre is safe.

Beyond that is doubtful. Some point still beyond that is unlawful for the reason that there is no substantial relation between the regulation and the health and safety of the community."

Zoning when reasonably applied can be of greater benefit to communities generally, as Metzenbaum says at page 6 of his book, " The Law of Zoning ": " Zoning does no more than apply the rules of good housekeeping to public affairs. It keeps the kitchen stove out of the parlor, the bookcase out of the pantry and the dinner table out of the bedroom ", and again at page 7, " Some have become so strongly inclined toward the benefits of zoning as to look upon it as a cure-all for every civic evil, and they vigorously resent any suggestion to the contrary. A careful survey, however, discloses that zoning is not a panacea."

Can it be said that the zoning ordinance in question has any relation to health, welfare or morals? I think not. At most, it is an attempt to protect the large estates in the village. There was never any plan to encourage the building of houses on 2-acre plots.

It follows, therefore, that the zoning ordinance is unconstitutional and void. That part of the action attacking the ordinance on the ground that no public hearings were held is dismissed.

Submit findings and judgment.