THE CLEVELAND TRUST CO., APPELLEE, *v.*
THE VILLAGE OF BROOKLYN, APPELLANT.

(No. 22342—Decided May 19, 1952.)

352

*Messrs. Halle, Haber, Berick & McNulty,* for appellee.

*Mr. Owen E. McAdams, Mr. Roy C. Scott* and *Mr. Michael L. Hearns,* for appellant.

HURD, J. This is an action originating in the Common Pleas Court of Cuyahoga County, wherein the zoning ordinance of the village of Brooklyn was declared to be illegal and void to the extent that it included plaintiff's property within a residence classification. It is appealed here on questions of law from a judgment enjoining the officials of the village of Brooklyn from attempting to enforce the provisions of such ordinance as to plaintiff's property, and from an order requiring the village to permit occupancy of plaintiff's property in accordance with the industrial use classification of such ordinance.

The essential facts are not in dispute. The plaintiff, The Cleveland Trust Company, holds the legal title to four adjacent unimproved parcels of land located in the village of Brooklyn and the city of Cleveland, which parcels front on the west side of Tiedeman road. These parcels have a frontage of approximately 1100 feet, commencing at the northerly right of way of the New York Central Belt Line Railroad and extending north 1100 feet and west to the Baltimore & Ohio Railroad. The most westerly parcel consisting of 31 acres is located in the city of Cleveland and is situated in the triangle between the two railroads and the Cleveland-Brooklyn boundary line. It is zoned by the city of Cleveland for general industrial purposes and is not involved in this action. The balance of the land comprising approximately 61 acres is situated within the village of Brooklyn and is zoned entirely for residential purposes. The Brooklyn area is divided into three parcels, as follows: (1) A narrow strip

having a width of 52 feet, fronting on Tiedeman road, adjacent to the northerly right of way of the New York Central Railroad; (2) a long narrow strip comprising approximately 14 acres having a frontage of approximately 215 feet on Tiedeman road, located adjacent to the northerly boundary of the 52-foot strip; and (3) a parcel having a frontage of approximately 803 feet on Tiedeman road, adjacent to the northerly boundary of the fourteen-acre tract.

The 31-acre parcel located in the city of Cleveland, together with the narrow 52-foot strip fronting on Tiedeman road and located adjacent to the northerly right of way of the New York Central Belt Line Railroad, and the northerly most parcel having 803 feet frontage on Tiedeman road, were purchased in 1919, legal title thereto being transferred to The Cleveland Trust Company as nominee in 1937.

The 14-acre tract, having a frontage of approximately 215 feet on Tiedeman road, which tract is located between the 52-foot strip and the parcel having 803 feet on Tiedeman road, was purchased in 1942, legal title to the same being placed in The Cleveland Trust Company as nominee.

Zoning ordinance No. 1940-19 of the village of Brooklyn was adopted in November 1940 and includes the entire area of the parcels in question in Class-A Use classification, and limits the use of such premises to dwelling houses, churches, schools, libraries, parks, hospitals and similar uses.

The plaintiff is merely holding legal title as nominee for the benefit of five persons who are owners of the entire tract and who purchased the 14-acre tract or middle parcel two years after the passage of the village zoning ordinance with notice that the property was zoned for residential purposes.

Except for small areas at the intersection of Tiedeman road, Memphis avenue and Biddulph road, which

is zoned for C-Use retail business, the development of Tiedeman road is residential in character.

The record shows 43 residential properties on Tiedeman road in Brooklyn village, a number of which are in the vicinity of plaintiff's property. Of this number, records of the building permits in evidence show 18 residences completed prior to and 25 residences completed after the adoption of the zoning ordinance in 1940. Photographs of a number of these residences are attached to the record as exhibits. The homes pictured are, for the most part, substantial in character and modern in appearance. Of the home owners who testified, three valued their respective properties at $20,000 each, one at $65,000, one at $13,000, and one at $13,500. One owner gave no opinion because, as she stated, her home was not for sale. All these witnesses testified that they investigated the neighborhood before buying and found it to be residential in character.

The record shows that from 1940, the date of the passage of the zoning ordinance, to the filing of plaintiff's petition, no formal application was made on behalf of the beneficial owners to use their premises for any particular purpose, although there is evidence that two of the beneficial owners protested to council against the adoption of the zoning ordinance because of its effect upon plaintiff's property and had conversations in respect thereto with the mayor of the village.

The trial court filed findings of fact and conclusions of law, holding that the classification of plaintiff's property in a Class A or dwelling house district is confiscatory, illegal and void as applied to the premises and constitutes a taking of plaintiff's property without due process of law in violation of plaintiff's constitutional rights and that the premises in question fall properly into Class E, or industrial use classification.

In pursuance of these findings, the court issued a

mandatory injunction and order, nullifying completely the provisions of the zoning ordinance as it applied to plaintiff's property, and, in effect, rezoned it for industrial use.

Defendant has filed eight assignments of error, which, summarized, are that the court erred in overruling defendant's motions for a directed verdict made at the close of plaintiff's testimony and at the close of all the testimony; that the court erred in finding that the zoning classification was confiscatory and constituted taking of plaintiff's property without due process; that the findings of fact and conclusions of law are contrary to and not sustained by the manifest weight of the evidence and the law applicable thereto; that the court erred in holding the zoning ordinance of the village of Brooklyn void to the extent that it included plaintiff's property within a Class A classification and use; that the court erred in indirectly rezoning plaintiff's property for industrial use by enjoining the village officials from refusing to grant any permit for industrial use of said premises; and that the court did not have jurisdiction of the cause.

For purposes of discussion, these assignments of error may be reduced to three principal questions as follows:

1. Did the trial court have authority to reclassify plaintiff's property from Class A or residential use to Class E or industrial use?

2. Was sufficient evidence introduced to warrant a finding by the trial court that the ordinance was arbitrary, confiscatory and unreasonable and, therefore, unconstitutional as it applied to plaintiff's property?

3. Did the trial court have jurisdiction?

An early authoritative decision on comprehensive zoning and the power of municipalities to forbid erection of buildings of a particular kind or for a particular purpose was rendered in a case which originated

in the federal court of this district and which was finally decided by the Supreme Court of the United States. *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R., 1016. In that case the court upheld the validity of a zoning ordinance which restricted to residence use a strip of land containing 68 acres along the Nickle Plate Railroad right of way, which land had been purchased with a view to industrial development. That case was followed by *Beery* v. *Houghton, Inspector of Bldgs.* (1926), 273 U. S., 671, 71 L. Ed., 832, 47 S. Ct., 474, which upheld the comprehensive zoning ordinance of the city of Minneapolis. This case, in turn, was followed by *Zahn* v. *Board of Public Works* (1927), 274 U. S., 325, 71 L. Ed., 1074, 47 S. Ct., 594, wherein the constitutionality of the zoning ordinance of the city of Los Angeles was upheld, and *Gorieb* v. *Fox* (1927), 274 U. S., 603, 71 L. Ed., 1228, 47 S. Ct., 675, 53 A. L. R., 1210, upholding the validity of the zoning ordinance of Roanoke, Virginia. Then followed the case of *Nectow* v. *City of Cambridge* (1928), 277 U. S., 183, 72 L. Ed., 842, 48 S. Ct., 447, in which the Supreme Court reaffirmed the principles of *Village of Euclid* v. *Ambler Realty Co.,* and *Zahn* v. *Board of Public Works, supra,* but set aside a provision of the zoning ordinance of the city of Cambridge as it applied to a land owner's property which had been classified as residential property only.

Prior to these decisions, the Supreme Court of Ohio decided the case of *Pritz* v. *Messer* (1925), 112 Ohio St., 628, 149 N. E., 30, in which the comprehensive zoning ordinance of the city of Cincinnati was upheld, in addition to which it was held that the benefit of the zoning ordinance accrued not only to the municipality but also to the abutting property owner who had brought the suit. Thereafter the Supreme Court decided the case of *City of Youngstown* v. *Kahn Bros.*

*Building Co.* (1925), 112 Ohio St., 654, 148 N. E., 842, 43 A. L. R., 662, in which the ordinance establishing a fraction only of a territory of a municipality into a district and providing that no building intended to be used as a dwelling could be erected within the district, except a single or two-family dwelling, was held unconstitutional. It was held further that the police power cannot be invoked for purely aesthetic purposes or to promote private comfort or private welfare.

This was followed by the case of *State, ex rel. City Ice & Fuel Co.,* v. *Stegner, Dir.* (1929), 120 Ohio St., 418, 166 N. E., 226, 64 A. L. R., 916, in which a zoning ordinance limiting the subsequent addition, extension or substitution of business buildings was upheld as being a valid exercise of the police power.

In the case of *State, ex rel. Clifton-Highland Co.,* v. *City of Lakewood* (1931), 124 Ohio St., 399, 178 N. E., 837 (Certiorari denied, 285 U. S., 549, 76 L. Ed., 940, 52 S. Ct., 406), the Supreme Court upheld the validity of the zoning ordinance of the city of Lakewood as it applied to a district zoned for apartment buildings and refused to set aside the ordinance as it applied to this district in favor of the owners who desired to substitute a business building for an apartment building.

In the case of *State, ex rel. Synod of Ohio of United Lutheran Church,* v. *Joseph* (1942), 139 Ohio St., 229, 39 N. E. (2d), 515, 138 A. L. R., 1274, the court held that the refusal of a special permit to erect a church in a residential district in pursuance of an administrative policy that no church should be erected in such district while property in the business district was still available was an unreasonable and arbitrary interference with the rights of private property guaranteed by the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States.

As a result of these and other decisions of state and federal courts, too numerous to cite or discuss herein, certain principles of law in respect of zoning powers of municipialities are firmly established and may be summarized as follows:

Whether the power exists to forbid the erection of a building of a particular kind or for a particular use is to be determined not by an abstract consideration of the building (or buildings), but by considering it in connection with the circumstances and the locality. If the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control. All zoning laws and regulations must find their justification in some aspect of the police power asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delineation. The power to limit industrial establishments to localities separate from residential sections is not to be denied upon the ground that its exercise will divert a flow of industrial development from the course which it would naturally follow, and will thereby injure complaining land owners.

Before a court will declare a zoning ordinance invalid it must clearly appear that it has no substantial relation to the public health, safety or morals or the general welfare. Conversely, a zoning ordinance will be declared invalid where it has no relation to public health, safety or morals or the general welfare. Mere aesthetic considerations are not sufficient to restrict the use of property so as to interfere with private uses. The power of a municipality to establish zones and to classify property accordingly is purely a legislative function which will not be interfered with by the courts unless such power is exercised in an arbitrary and unreasonable manner in violation of constitutional guarantees, and the facts to justify interference with the

sound discretion of the legislative body must clearly appear from the evidence, and, if debatable, the legislation will be upheld. A determination of whether a zoning classification is unreasonable, arbitrary and capricious must depend upon the facts and circumstances of each particular case under applicable principles of law. Courts will not substitute their judgment for the will of the legislative body. The strong presumption of validity which applies to legislative acts in general, applies with equal force to zoning ordinances.

Guided by these principles, we proceed now to apply the law to the facts of the instant case, discussing the questions in the order posed above.

Considering the first question, the journal entry shows that the court not only rendered a declaratory judgment, but, in addition, issued a mandatory injunction whereby defendant was forever enjoined from refusing to grant any permit or take any other official action deemed necessary or appropriate to enable plaintiff, its successors, assigns and grantees, to develop said premises and to construct buildings thereon and to permit occupancy thereof in accordance with Class E or industrial use classification under the ordinance. This order is challenged as not being within the scope of the court's authority. The zoning ordinance of the village provides for five separate use classifications, including (a) residential use, (b) apartment house use, (c) retail business, (d) commercial use, and (e) industrial use.

The trial court by its entry ignored the intermediate classifications of (B-1) apartment house, (c) retail business, and (d) commercial use. Granting the jurisdiction of the court in a particular case to declare invalid the whole or any part of a zoning ordinance in appropriate proceedings where the zoning in question is an invasion of constitutional rights, having no re-

lationship to the public safety, health, morals or general welfare of a community, there is a restriction upon the judicial process whereby it is limited to a review of legislation to determine whether the legislative body acted in such an unconstitutional manner. It is fundamental that a court may not legislate. The judicial process is to interpret the law and not to make law. Consequently, the trial court in the instant case was without jurisdiction to determine the ultimate classification of the area in question as a Class E or industrial use by ignoring the other intermediate uses established by the ordinance, and thereby substituting its judgment for that of the council of the village of Brooklyn. Its action in so doing was prejudicially erroneous and would require the reversal or modification of the judgment in any event, were it not for the more important consideration which will now be discussed, being the second question posed above.

In considering the second question, it should be observed that there is here no challenge of the power of the village of Brooklyn to enact the comprehensive zoning ordinance in question, by virtue of its police powers granted under Section 3, Article XVIII of the Ohio Constitution and the statutes thereunder enacted. Counsel for the plaintiff disclaim any intention to attack the validity of the ordinance in general. Their claim is that the ordinance as applied to this particular tract of property is invalid because it is economically unsound to use the property for any of the purposes permitted by the Class A use under which it, together with a large area of surrounding property, has been classified. In support of this claim, counsel for the owners in their brief and oral argument urge that the property would be considerably more valuable for industrial purposes than for any other, a proposition which was supported by plaintiff's

two expert witnesses and conceded by the one expert witness who testified for the defendant.

We have heretofore pointed out that there is no dispute as to the essential facts, but only as to the conclusions to be drawn from these facts. The facts show that there has been no development in the property of plaintiff in connection with either the 52-foot strip or the northerly most parcel, having 803 feet on Tiedeman road and acquired in 1919, or the 14-acre tract having a frontage of 215 feet on Tiedeman road and purchased in 1942. On the other hand, the record shows that there has been a gradual development of Tiedeman road as a residential thoroughfare, as indicated by the number of residences built both before and after the adoption of the zoning ordinance. Inspection of the zoning map in evidence shows that throughout the entire village no property adjacent to and north of the Belt Line Railroad is zoned for industrial purposes. The commercial and industrial development of the village is south of the Belt Line Railroad and is largely concentrated in the area adjacent to the east and west thoroughfare known as Brook Park road.

It is argued that because that part of plaintiff's property which is situated in close proximity to the railroads in the city of Cleveland is zoned for industrial purposes, that part without the limits of the city of Cleveland but within the limits of Brooklyn village should necessarily likewise be so classified. This argument fails to take into consideration the residential character of Tiedeman road frontage exclusive of plaintiff's property and the fact that no other property in the village north of the Belt Line Railroad is in an industrial use classification. True it is that plaintiff's property would be much more valuable if zoned for industrial uses, but this fact does not in itself render the ordinance unconstitutional.

In 8 McQuillin on Municipal Corporations, 82, Section 25.44, it is said:

"The general rule is that hardship, limitation of use or diminution or increase of value of private property does not in itself render a zoning measure unconstitutional or invalid. Indeed, a zoning ordinance is not necessarily invalid although it is harsh and seriously depreciates the value of property involved. Nor is the test of the validity of a zoning measure its financial advantage or disadvantage to the owner arising from the measure or its enforcement.

"* * *

"Mere diminution of market value or interference with the property owner's personal plans and desires relative to his property is insufficient to invalidate a zoning ordinance or to entitle him to a variance. Similarly, the fact that property is more valuable for an excluded use does not in itself void a zoning restriction. Consistently with these principles, a zoning ordinance may classify property for residential purposes although it can more profitably or beneficially be used for commercial purposes, * * * or for industrial purposes. * * *" (Citing many authoritative federal and state cases.)

Furthermore, the effect of reclassifying plaintiff's property to industrial use would be highly detrimental to if not destructive of the valuation of other Tiedeman road property owners who purchased property and built homes relying upon the residential character and development of the thoroughfare.

Under all the facts and considered in connection with the circumstances and the locality, can it be judicially determined that the classification of the entire Tiedeman road area for residential purposes was an arbitrary use of the police power, unrelated to the public health, welfare, morals and safety of the community?

We do not think so. Even if the question is fairly debatable, the legislative judgment must be allowed to control and the most that can be said for plaintiff's contention is that it makes a debatable question.

In the case of *In re Application of Fox Meadow Estates, Inc., for an Order of Mandamus,* 233 App. Div., 250, 252, N. Y. Supp., 178 (Affirmed, 261 N. Y., 506, 185 N. E., 714), the court, in holding that a zoning ordinance which restricted to single family dwellings the remainder of a village outside the territory adjacent to then existing business and apartment house districts was not unreasonable and discriminatory, at page 251, said:

"* * * The respondent claimed and sought to establish on the trial that the ordinance was arbitrary, unreasonable, discriminatory and confiscatory, because this particular property was included in the residence district. At most it made a debatable question, and barely that, as to the acts of the village authorities in enacting the zoning plan. It is evident that its sole object was profit, and no one joins in its complaint.

"The law is too well settled to make necessary any discussion. The power of a municipality to determine for itself what plans are necessary to promote the public health, morals, safety, and the welfare, convenience and general prosperity of its people is a legislative question, which may not be interfered with by the courts, except in rare instances. (*Matter of Wulfsohn* v. *Burden,* 241 N. Y., 288; *Euclid* v. *Ambler Co.,* 272 U. S., 365; *Zahn* v. *Board of Public Works,* 274, *id.,* 325.)"

Plaintiff argues that the case of *Nectow* v. *City of Cambridge, supra,* should be considered as a precedent in this case. That case was decided on a condensed statement of facts taken from the master's report which states in part that "when the zoning ordinance

was enacted, plaintiff in error was and still is the owner of a tract of land containing 140,000 square feet, of which the locus here in question is a part." It is stated further, in part:

"The effect of the zoning is to separate from the west end of plaintiff in error's tract a strip 100 feet in width. The Ford Motor Company has a large auto assembling factory south of the locus; and a soap factory and the tracks of the Boston & Albany Railroad lie near. Opposite the locus, on Brookline street, and included in the same district, there are some residences; and opposite the locus, on Henry street, and in the same district, are other residences."

One of the conclusions of the master was:

" 'I am satisfied that the districting of the plaintiff's land in a residence district would not promote the health, safety, convenience and general welfare of the inhabitants of that part of the defendant city, taking into account the natural development thereof and the character of the district and the resulting benefit to accrue to the whole city and I so find.' "

The Supreme Court held that the finding of the master was determinative of the case. We think the facts of that case are clearly distinguishable from those of the instant case.

Counsel also cite *Wondrak* v. *Kelly,* 129 Ohio St., 268, 195 N. E., 65. That case had to do with a police regulation restricting the height of a fence above the plane of the finished grade of the lots and the distance thereof from abutting lot lines. The court set aside this part of the building code as being unreasonable and arbitrary, holding that aesthetic reasons alone, unrelated to requirements of the public health, safety and welfare, will not justify the exercise of the police power. Clearly that case cannot be considered authority or precedent for this case. Counsel cite also the

case of *City of Youngstown* v. *Kahn Bros. Building Co., supra.* The facts of that case are also clearly distinguishable from the case at bar. Many other cases are cited by counsel for plaintiff, which we have examined and find inapplicable to the facts of this case.

It seems to us the early case of *Village of Euclid* v. *Ambler Realty Co., supra,* is more applicable, particularly in relation to the argument relating to the railroad frontage. The locus in question in that case, as shown in the opinion, is ''a tract of land containing 68 acres, situated in the westerly end of the village, abutting on Euclid avenue to the south and the Nickle Plate Railroad to the north. Adjoining this tract, both on the east and on the west, there have been laid out restrictive residential plats upon which residences have been erected.''

While in that case the entire theory of zoning was under attack, some of the arguments made in that case are made in the instant case. It was asserted there, as here, that the effect of the enforcement of such an ordinance is to deprive the owners of their property without due process of law. This contention was disposed of in that case. On the reasoning of that case and the other cases, a relatively small number of which we have cited and discussed, we are compelled to sustain the validity of the ordinance challenged here and as it applies to plaintiff's property.

Up to the present time there have been no changes in the conditions and circumstances surrounding plaintiff's property which would justify judicial interference with the legislative process. Conceivably, at some future time conditions will change sufficiently to warrant a further consideration of this subject or a plan of development eventually will materialize which, while retaining the Tiedeman road frontage for resi-

dence purposes to a reasonable depth, will enable plaintiff to use the remainder of the property for some purpose other than exclusively residential, if then desired, but this, as well as the other questions herein discussed, are legislative problems which must of necessity be left to the consideration of the village council. Certainly these questions cannot be determined in the first instance by the judicial process.

This leaves for consideration the third question above cited relating to jurisdiction. Defendant contends that the trial court erred in overruling plaintiff's motion for judgment on the ground that the court was without jurisdiction because of the failure of plaintiff to comply with the provisions of Section 12102-11, General Code, which in substance provides that in any proceeding which involves the validity of a municipal ordinance, where the ordinance is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceedings and is then entitled to be heard.

In view of our holding on the merits of the case and in view of the fact that the question of jurisdiction in relation to the statute was not raised in the trial court, we are not constrained to consider it here.

In conclusion, we hold that on the face of the record and the admitted facts, it is not clearly established that the zoning ordinance of the defendant village is unreasonable, arbitrary or capricious or that it has no relation to the public health, safety, morals or the general welfare. Therefore, the trial court erred prejudicially in holding that the zoning ordinance as applied to plaintiff's property is an unconstitutional exercise of the police power.

In view of this, the trial court should have granted the motion of defendant for judgment at the close of all the evidence.

For the reasons stated, the judgment of the Com-

mon Pleas Court is reversed, and, proceeding to enter the judgment which the trial court should have rendered, final judgment is entered for the defendant.

*Judgment reversed.*

SKEEL, P. J., and THOMPSON, J., concur.