PARTAIN ET AL., APPELLANTS, *v.* CITY OF BROOKLYN ET AL., APPELLEES.

(No. 23743—Decided March 22, 1956.)

*Mr. Norman C. Schwenk* and *Mr. Roland A. Baskin,* for appellants.

*Messrs. Calfee, Fogg, McChord & Halter,* and *Mr. N. A. Brinsky,* for appellees.

HURD, J. This is a suit in equity here appealed on questions of law and fact from a judgment of the Court of Common Pleas of Cuyahoga County finding in favor of the defendants and sustaining the validity of an amendment to the zoning ordinance of the city of Brooklyn, by the provisions of which the classification of the property in question was changed from Class "A," dwelling house use, to Class "E," industrial use.

The plaintiffs are property owners and taxpayers of the city of Brooklyn and residents on Tiedeman Road in that city. The defendants are the city of Brooklyn, a municipal corporation, hereinafter designated Brooklyn, John M. Coyne, mayor, and Joseph E. Murphy, director of public safety, respectively, of said city, and Lamson & Sessions Company, hereinafter designated the company, the owner of the property involved in this lawsuit.

The prayer of the petition is that the court declare unconstitutional and void the amending ordinance No. 1955-59, and that the defendant officers of the municipality be permanently enjoined from issuing permits to the defendant company for the construction of a factory building or any other structures not permitted in a class "A" district, and that the company be permanently enjoined from occupying the land in question for industrial purposes.

Since there is virtually no dispute as to the essential facts which have been stipulated in part and which have been shown in part by documentary evidence and in part by oral evidence, we shall recite here briefly only such facts as are necessary to an understanding of this decision.

Brooklyn is a municipal corporation operating under a charter adopted by its electors effective as of January 1, 1952. It has an area of approximately five and one-half (5½) square miles and a rapidly growing population now estimated between 10,000 and 12,000 inhabitants. It is bounded on its north, east and west by the city of Cleveland, and on the south by the city of Parma.

Brookpark Road runs in a general easterly and westerly direction and forms the dividing line between Parma and Brooklyn. Memphis Avenue and Biddulph Road run parallel to each other through Brooklyn in an easterly and westerly direction, Biddulph being approximately eight-tenths of a mile south of Memphis Avenue. Tiedeman Road runs in a general northerly and northeasterly direction from Brookpark Road, north to Memphis Avenue. Tiedeman Road, at its intersection with Biddulph, is approximately one and seven-tenths miles from the intersection of Biddulph and Ridge Road. Approximately 1,000 feet north of Brookpark Road, the New York Central Belt Line Railroad runs in a generally parallel direction to Brookpark Road.

The real estate here involved, which was purchased in 1955 by the company, comprises 61 acres of land in Brooklyn, in addition to 31 acres of land immediately contiguous thereto within the city of Cleveland, both parcels having been purchased simultaneously, thereby making a total purchase of 92 acres as shown by deed attached to the stipulations. In the same year, the council of Brooklyn amended the zoning ordinance by reclassifying for industrial use that part of the tract which lies in Brooklyn fronting on Tiedeman Road. The company then deeded, as shown by stipulation, a strip of land 25 feet wide and approximately 2,400 feet deep, lying between its property and the residences to the north along Tiedeman Road, to the city of Brooklyn. It appears that this strip was transferred by the defendant company to Brooklyn at the request of the Brooklyn city council in order to afford the residential property holders north of the so-called Lamson & Sessions property a degree of protection from industry, as the building's plans approved by the Brooklyn building inspector provide for a screening along this northerly boundary in the form of trees or shrubbery.

The 31-acre parcel is located within the city of Cleveland and is situated in a triangle between the belt line railroad, the Baltimore & Ohio Railroad and the Cleveland-Brooklyn boundary line. It is now zoned and has always been zoned for industrial uses, but is not involved in this suit. The Brooklyn property is located north of the New York Central Belt Line Railroad and abuts on the west side of Tiedeman Road, having a

frontage thereon of approximately 1,100 feet. The belt line railroad is located on a raised bank 15 to 20 feet above the ground level of the rezoned land immediately adjoining it to the north. There is uncontradicted evidence in the record showing that in the 15 years which have elapsed since the passage of the original zoning ordinance in 1940 there has not been any application filed for a permit to erect a residence on that parcel.

In 1940, the village of Brooklyn adopted a comprehensive zoning ordinance which has been amended a number of times. It divides the municipality into use districts, and under it there were established five zones or districts classified as follows:

Class "A"—Dwelling House District.

Class "B"—Apartment House District.

Class "C"—Retail District.

Class "D"—Commercial District.

Class "E"—Industrial District.

The Partains own the property, with a residence thereon, immediately to the north of the 25-foot strip of land above described. The plaintiff Martha Bredenbeck owns the property, with a residence thereon, on the opposite side of Tiedeman Road, approximately 200 feet to the north of the property owned by the company. Directly across the road from the company property and extending northerly along Tiedeman Road is a public golf course. The Bredenbeck property lies to the north of the golf course.

The principal question presented is whether the amending ordinance reclassifying the property in question for industrial uses is a valid exercise of legislative authority.

The real property here involved is the identical parcel which was the subject of a zoning decision by this court in *Cleveland Trust Co.* v. *Village of Brooklyn*, 92 Ohio App., 351, 110 N. E. (2d), 440, decided May 1, 1952. A motion to certify the record was overruled and the appeal dismissed by the Supreme Court, October 29, 1952, 158 Ohio St., 258, 108 N. E. (2d), 679. Both parties have cited and quoted from that case.

In that case, the Court of Common Pleas had declared the zoning ordinance to be illegal and void to the extent that it included the property in question within a residence classification, and issued an order requiring the village to permit occupancy

for industrial purposes in accordance with class "E," "Industrial District."

That was an appeal on questions of law and this court reversed the judgment of the Court of Common Pleas and entered final judgment for the village. We held that the presumption of validity which attaches to legislative acts in general applies with equal force to zoning ordinances, that the facts which would justify judicial interference with the legislative function must clearly appear from the evidence and that, the legislative classification for zoning purposes at that time being fairly debatable, the ordinance as it then provided should be allowed to stand, free from interference by judicial decree.

Basically, that case was decided upon the proposition that the legislative function of a municipality in establishing zones and classifying property accordingly will not be interfered with by the courts unless such power is exercised in an arbitrary and unreasonable manner in violation of constitutional guarantees, and the facts to justify interference with the sound discretion of the legislative body must clearly appear from the evidence, and, if debatable, the legislation will be upheld.

Within the period of approximately three years since the time of that decision in May of 1952, the population of the Brooklyn area has increased considerably, and there has been a substantial industrial development in the entire Brooklyn area and surrounding communities. It is true that there has been no change in this particular land, which still remains vacant.

The most important change since that time in this particular neighborhood is the reclassification of the land by the city for industrial use, and the issuance of a permit for such use. However, due to the rapid growth in population and industry in the area, we are in accord with the statement of the trial judge. set forth in his opinion, that "in the light of the march of industry into the Brooklyn area and the neighboring communities and the changes in the area and those which must still come, it cannot possibly be said that the future of a strip of land wholly undeveloped, adjoining a railroad, is not a subject for wide difference of opinion and generally honest debate." Now that the zoning classification of this property has been changed by legislative action, the principle which we applied in *Cleveland Trust*

*Co.* v. *Village of Brooklyn, supra,* must still prevail. We stated then and we are obliged to state now that the rezoning of this property, under all of the facts and circumstances of the case. is a matter for legislative action rather than for judicial decree.

The power of a municipality to establish zones and classify property accordingly is purely a legislative function, unless such power is exercised in an arbitrary, confiscatory and unreasonable manner in violation of constitutional guarantees. Upon a complete examination of the record in this case and giving full consideration to the arguments advanced by counsel in support of their respective contentions, we conclude that the amending ordinance, the constitutionality of which is here challenged, must be considered as a valid exercise of the police power in the protection of the public health, morals, safety and general welfare of the people, and that, therefore, this court is without authority to nullify that legislation by judicial decree.

We are in accord with the conclusion of the trial judge in his consideration of the case as expressed in his memorandum opinion when he said in part, that ''granting to the plaintiffs in this cause the most favorable view possible, the court must hold that the rezoning involved here was on a debatable matter, was not arbitrarily done, and was a valid exercise of power vested in council.''

The plaintiffs have raised two other issues and complained that the amending ordinance was passed as an emergency measure, thereby defeating the right of referendum, and that the rezoning herein constitutes spot zoning. We think these questions were properly resolved in favor of the defendants based upon the provisions of Section 731.30, Revised Code, which excludes emergency ordinances or measures passed for the immediate preservation of the public peace, health or safety upon receiving a two-thirds vote of all members elected to the legislative authority from the right of referendum. The vote in adopting the amending ordinance was six to one, constituting more than the required two-thirds. On this subject, the decision of the Supreme Court of Ohio in *City of Youngstown* v. *Aiello,* 156 Ohio St., 32, 100 N. E. (2d), 62, is dispositive of the issue in favor of the defendants. In any event, it appears that the period

within which a petition for a referendum could have been filed had expired prior to the filing of the original petition herein.

We think it was also correctly held, as found by the trial judge, that the rezoning here does not constitute spot zoning in the generally accepted meaning of that term.

It appears that the ordinance in question was adopted after a full public hearing, attended by many persons, and that there is no claim of any kind of fraud or collusion or official misconduct in the adoption of the amending ordinance.

For the reasons stated and for the reasons set forth at greater length in the memorandum opinions of Blythin, J., 73 Ohio Law Abs., 481, with which we are in complete accord, the decree in this court must be for the defendants, as in Common Pleas Court.

*Judgment for defendants.*

KOVACHY, P. J., and SKEEL, J., concur.