### CITY OF HOWELL *v.* KAAL.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—REASONABLENESS —RESIDENCE USE—TRAILER CAMP.

    Claim of trailer camp operators that ordinance which had zoned their property for residential-agricultural use was unreasonable as to their property *held,* untenable, where use made of the portion of property owned by defendants' predecessor conformed to the ordinance for some 4 years after the ordinance was adopted, adjoining property used for light manufacturing purposes is conducted in buildings presenting a rural or farming appearance, defendants' property is suitable for residential use and depreciation in value, although substantial, was only partial and a substantial value remained.

2. SAME—ZONING    ORDINANCE—CLASSIFICATION—DEPRECIATION    IN VALUE.

    Depreciation in value is not a definite yardstick by which to measure the reasonableness of the classification of a municipal zoning ordinance and, alone, is not necessarily enough.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning, §§ 21, 22, 63.
[1] Regulation of tourist or trailer camps, motor courts, or motels. 22 ALR2d 774.
[2] 58 Am Jur, Zoning § 140.
[2] Zoning statutes or ordinances.    86 ALR 659; 117 ALR 1117.
[3] 58 Am Jur, Zoning § 207.
[4, 5] 58 Am Jur, Zoning § 63.

3. SAME—ZONING ORDINANCE—RESIDENCE USE—NONCONFORMING USE
   AS TRAILER CAMP—CONFISCATION.

   A municipal zoning ordinance classifying defendants' property
   as residential-agricultural area was not rendered confiscatory
   because its value for other and nonconforming uses such as
   a trailer camp was greater than conforming uses, especially
   where the nonconforming uses were not commenced until long
   after the ordinance had been adopted and defendants purchased
   the property, with knowledge of the ordinance, at a price
   greater than its value when used for residence purposes.

4. SAME—ZONING ORDINANCE—STATUTES—TRAILER COACH PARKS.

   A city zoning ordinance which permits trailer coach parks in
   3 areas in the city *held,* not in conflict with State statute
   licensing and regulating such parks but also including a provi-
   sion requiring applicant for a license to comply with municipal
   ordinances not in conflict with that statute and requiring an
   applicant to secure a building permit in municipalities having
   a building code (CL 1948, § 125.751 *et seq.,* as last amended
   by PA 1951, No 34).

5. SAME—ZONING ORDINANCE—STATUTES—TRAILER COACH PARKS.

   Municipal zoning ordinance limiting use of property owned by
   defendants used as a trailer camp to residence and agricul-
   tural uses *held,* not in conflict with State statute licensing
   and regulating trailer coach parks nor to have invaded an
   area occupied by the statute (CL 1948, § 125.751 *et seq.,* as
   last amended by PA 1951, No 34).

Appeal from Livingston; Simpson (John) J., pre-
siding. Submitted October 12, 1954. (Docket No.
72, Calendar No. 46,048.) Decided December 29,
1954.

Bill by City of Howell, a municipal corporation,
and its designated enforcement agent, against E. G.
Kaal and Augusta E. Kaal, to enjoin violation of
zoning ordinance. Decree for plaintiffs. Defend-
ants appeal. Affirmed.

*Charles K. Van Winkle,* City Attorney (*Van Win-
kle & Van Winkle,* of counsel), for plaintiffs.

*E. Reed Fletcher* and *Glenn C. Yelland,* for de-
fendants.

DETHMERS, J.  This is a zoning ordinance case in
which defendants appeal from decree enjoining vio-
lation..by operation of a trailer camp.  They own
4–1/2 acres, of which approximately 3/4 is situated
within plaintiff city and 1/4 in the adjoining town-
ship.  The city portion lies in an area zoned since
1942 as R-A (residential-agricultural), in which
the ordinance permits single or 2-family dwellings,
nurseries, greenhouses, truck farming, farms, sta-
bles, riding academies and necessary accessory build-
ings on plots of 5 acres or more, but on smaller
acreages use is limited to single or 2-family dwell-
ings.  Defendants' land is part of an old millsite
property.  The remainder of that property is across
a creek and is owned by the Millsite Tackle company.
Located thereon is a barn, a house used as an office,
and a 1-story frame building, resembling a large
dairy barn, which is used for tackle manufacturing,
a light manufacturing operation in which few per-
sons are employed.  The entire millsite property
presents a neat, clean appearance, which is rural in
character.  Defendants' property is bordered on the
north by the city limits and a highway on which it
has 200 to 250 feet of frontage, across from which is
farm area; on the east by a residential subdivision
in which dwellings have been built; on the south by
a lake, the mouth of the creek and residential and
farm land; and on the west by the creek, beyond
which lies the tackle company property, and further
west is an open area once used as an airport.  Ex-
cept for the tackle company property, the entire sur-
rounding area for a distance of at least 1/2 mile in
each direction is residential or farm land.  Defend-
ants say their land is rough and divided across the
middle by a crater 30 feet deep and 150 feet wide,
and that it all slopes abruptly west toward the creek.
In support of the claim that their property is un-
suited for the purpose for which it is zoned and

valuable only for use as a trailer camp defendants' chief reliance is placed, aside from opinion testimony, on 5 photographs of the premises attached to the record as exhibits. Plaintiffs contend that the property is suited to residential purposes, pointing out that it was being so used when the ordinance was adopted and relying on testimony that the slope to the creek is not severe, that the land is all slightly rolling, that it has a level area along the highway and at the present location of trailers which could be used as building sites, that although its value, in the opinion of 1 of defendants' witnesses, would be worth twice as much as a trailer camp, nevertheless, as residential property it would be worth $10,000, and, finally, testimony of the planning engineer of the city of Lansing that the topography of the land does not limit or prohibit its use for residential purposes. The trial judge viewed the premises and expressed the opinion that the zoning provisions were reasonable as applied thereto. In 1947, five years after enactment of the ordinance, when defendants' property was still being used as single-residence property, defendants' predecessor in title began the operation of the trailer camp on the premises. Criminal prosecution was brought against him because thereof, but the case was dismissed. Later, in 1951, defendants bought the property as a trailer camp for $23,500, knowing that the ordinance prohibited its use for that purpose.

Defendants assert that the ordinance is unreasonable as applied to their property for 4 reasons, which we consider seriatim: (1) That the property has always been used for business purposes. The testimony discloses that while the property was part of the millsite the portion owned by defendants was never directly used for that purpose, but only as residential property and that, at all events, after defendants' predecessor purchased this portion of

the millsite it was used as residential property only for more than a year, thus abandoning any rights which might theretofore have existed to a nonconforming use under the provisions of the ordinance. (2) That the property adjoins that of the tackle company. As previously noted, the testimony is that the manufacturing operation is light with few employees, across a creek from defendants, in buildings and surroundings that present a rural or farming appearance. (3) That the property is unsuited to residential use because of its topography. The testimony above outlined, supporting the finding made by the trial judge after he had viewed the premises, indicates that the property is suited to residential use and we cannot say that any of the testimony or the mentioned photographs persuades us to a contrary view. (4) That as applied to defendants' property, the ordinance is confiscatory. The record establishes that the property was used for a single-residence purpose when the ordinance was adopted and for 5 years thereafter; that in the opinion of a defense witness it has a value for that purpose of $10,000; that its use as a trailer camp began 5 years after adoption of the ordinance and that it was not until 4 years after that that defendants purchased it with full knowledge of the provisions of the ordinance. Defendants cite such cases as *Janesick* v. *City of Detroit,* 337 Mich 549; and *Ervin Acceptance Co.* v. *City of Ann Arbor,* 322 Mich 404, for the proposition that in determining the reasonableness of the ordinance the court will consider the depreciation in value which it occasions, especially when it destroys most of the value of the property involved. Those cases also state that depreciation in value is not a definite yardstick by which to measure the reasonableness and are in accord with our holding in *Moreland* v. *Armstrong,* 297 Mich 32, 36, that:

"Mere depreciation in value by itself is not enough. The test is whether the zoning classification is unreasonable."

Where the property in question is suited to the R-A purpose assigned to it by the ordinance, it is surrounded for a considerable distance by property so used, and it was being so used at the time the ordinance was adopted and had a substantial value for that purpose, the fact that at a later date it was put to an illegal use and, as such, was bought by defendants, with knowledge of the ordinance, at a price higher than the value of the property when used for lawful purpose, does not render the ordinance confiscatory. To hold that it does would render the residential classification under every zoning ordinance vulnerable to attack as unreasonable and confiscatory the moment the owner of property so zoned found opportunity to sell it for industrial purposes at a price beyond its value for residential purposes. That is not the law. Defendants took a calculated risk, hoping that the ordinance would not be enforced or that it would be amended. The failure of their gamble cannot be urged against the validity of the ordinance.

Defendants also urge that the ordinance is invalid because in conflict with PA 1939, No 143, as amended (CL 1948, § 125.751 *et seq.,* as last amended by PA 1951, No 34 [Stat Ann 1951 Cum Supp § 5.278 (1) *et seq.*]), providing for the licensing and regulating of trailer coach parks. Defendants cite *Richards* v. *City of Pontiac,* 305 Mich 666; *Loose* v. *City of Battle Creek,* 309 Mich 1; *Gust* v. *Township of Canton,* 337 Mich 137. The substance of the holdings in those cases is to the effect that a city ordinance in conflict with a statute is to that extent invalid, that an ordinance may not invade a field completely occupied by statute but may enter an area not pre-empted by the State act, that what the State

law expressly permits an ordinance may not prohibit, and that a zoning ordinance may not operate to prohibit a nonconforming use in existence when the ordinance was adopted. The zoning ordinance here in question does not undertake to license, regulate or prohibit trailer coach parks. They are permitted in 3 zones in the city. Section 5 of the trailer coach act* provides with respect to permits under that act that:

"Such a permit does not relieve the applicant from securing building permits in municipalities having a building code; or from complying with any other muncipal ordinance or ordinances, applicable thereto, not in conflict with this statute."

The zoning ordinance and its provisions zoning defendants' property as R-A are not in conflict with the statute and do not invade an area occupied by it.

Decree affirmed, with costs to plaintiffs.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred.

---

* PA 1939, No 143, § 5, as amended by PA 1941, No 255 (CL 1948, § 125.755 [Stat Ann 1953 Cum Supp § 5.278(5)].—REPORTER.