ALSENAS, APPELLEE, *v.* CITY OF BRECKSVILLE ET AL.,
APPELLANTS.

[Cite as Alsenas v. Brecksville (1972),
29 Ohio App. 2d 255.]

256

*Mr. Albert M. Heavilin* and *Mr. Donald P. Mull*, for appellee.

*Mr. Earl T. Longley*, law director, for appellant.

SILBERT, J. This is a declaratory judgment action seeking to have the zoning ordinances of the city of Brecksville declared unconstitutional as applied to certain parcels of land which plaintiff-appellee has options to buy, conditioned on the outcome of this litigation. The trial court granted the relief sought. The defendants have brought the case to this court on appeal.

The parties agree that the land in question is of extremely uneven topography. It is presently zoned "Class A" with a minimum sublot restriction of 100 feet by 200 feet or 20,000 square foot area. The gravamen of appellee's case is, as stated in his petition, that

"* * * due to the unusual topography of said property, * * * the refusal of Defendant[s] to rezone said land to a Class A-1 (Apartment-Residential Use) constitutes a confiscation of said property and subjects Plaintiff to irreparable injury * * * [and] * * * the present zoning of said land for Single-Family Residence Use (Class A) is not economically feasible, practical, or possible, when examined in the light of the topography of the land and zoning requirements."

Upon the evidence presented, the trial court concluded:

"That the uncontradicted evidence shows that due to the extreme and irregular topography of [the] land it is physically impossible to develop said area *as a standard size subdivision*, having approximately 180 sublots, as prescribed in a Class A or First Residential District [and]

"That the uncontroverted evidence also disclosed that as a result of the topography of said land, only 70 sublots could be developed, or only 38% of the normal 180 sublots on 108-acre subdivision, under the existing platting and zoning regulations.'' (Emphasis added.)

Further finding that suggested alternative uses "do * * * not indicate any relationship as to the public peace, health, or safety of the municipality,'' the court held:

"That to require a property owner to utilize said land for single-family residences, where the land is characterized by an extreme and irregular topography, deprives said owner of the legal and rightful use of his property with no commensurate benefit to the municipality and is, therefore, unreasonable and contrary to law [and that]

"* * * where evidence presented as to a comprehensive plan of land use as applied to a particular parcel or parcels of land bears no relationship to the public peace, health, safety, and general welfare of the municipality, then said comprehensive plan as applied to that parcel or parcels of land is confiscatory and unconstitutional.''

## I.

At the outset it should be clearly recognized that this case is not an appeal from an administrative decision denying a variance or similar relief but an attack on the validity of the zoning plan, as adopted by the proper municipal authorities and as applicable to specific land. If it had been otherwise, questions of hardship might properly be in issue in their own right. Since it is not, such issues arise only secondarily. "Actual or potential [financial] loss does not *of itself* render * * *[a] zoning ordinance invalid'' (*Curtiss* v. *Cleveland* (1957), 166 Ohio St. 509, 144 N. E. 2d 177, emphasis added), and a zoning ordinance may nevertheless be a valid legislative enactment, "[e]ven though [it] * * * destroys the value of property which has been used in what has theretofore been a lawful undertaking * * *'' (*Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127, 163 N. E. 2d 682).

It is apparently the appellee's position that this case is to be decided solely on the basis of what he imagines is

an injury to himself resulting from a refusal by the municipality to permit him to undertake what he thinks might be a more profitable use of the land in question—a refusal which he believes may be justified only by the most immediate benefit to the municipality. Throughout the course of this litigation, he has sought to limit the case to an abstract attack on a particular zoning of these specific parcels and to as narrow a consideration of that question as possible. Compare appellee's position in *Cleveland Trust Co.* v. *Village of Brooklyn* (Cuyahoga Co. 1952), 92 Ohio App. 351, 360, 110 N. E. 2d 440, appeal dismissed, 158 Ohio St. 258. (No debatable constitutional question.)

The land in question was zoned after careful consideration by both city and regional officials. It was proposed and adopted by the Brecksville City Council as part of an overall zoning plan for the entire community, commonly referred to as a "master plan." Planning, of course, embraces more than zoning, *per se.* As well as setting out a zoning plan providing for the orderly development of the community, the master plan set out planning criteria, including, *inter alia,* criteria as to maximum safe land slopes on which construction might be reasonably and safely permitted criteria which should be met if apartment houses are to be constructed, and criteria governing traffic considerations as they affect municipal planning and development.

There is no claim here that those criteria were not followed. There is no claim that this land was treated differently than comparable land similarly situated. Nor has the appellee shown or attempted to show that the question of appropriate zoning of this land is severable from the broader question of municipal zoning as a whole, i. e., that the land on which he holds his options may be treated as other than an integral part of the total community insofar as planning is concerned. Compare *Cleveland Trust Co.* v. *Village of Brooklyn, supra* (92 Ohio App. 351), syllabus paragraph 5, and at 362-363; see, also, *Morris* v. *Roseman* (Court of Appeals, Cuyahoga Co., 1954), 118 N. E. 2d 429, 432, and *State, ex rel. Cook,* v. *Turgeon* (Cuyahoga

Co. 1947), 84 Ohio App. 287, syllabus, paragraph 2; compare, *Urmston* v. *City of North College Hill* (Hamilton Co. 1961), 114 Ohio App. 213, syllabus, paragraph 3, 175 N. E. 2d 203, appeal dismissed, 172 Ohio St. 426. (No debatable constitutional question.)

## II.

In setting out the law which governs this case, it is perhaps useful to recall that zoning laws, while restricting land use, are actually enacted to control the abuses of men. As Judge Allen indicated, in the landmark case of *Pritz* v. *Messer* (1925), 112 Ohio St. 628, 638, 149 N. E. 30:

"* * * society may restrict the use of property without making compensation therefor, if the restriction be reasonably necessary for the preservation of the public health, morals, or safety. This is so, because all property within the state is held subject to the implied condition that it will be used *as not to injure the equal rights of others* to the use and benefit of their own property." (Emphasis added.)

Stated in broader terms, property is not taken for the public good insofar as any deprivation of value is the incidental, albeit unavoidable consequence of a bona fide purpose to prevent unsocial conduct—that is, to prevent persons, through restrictions on land use, from so conducting themselves as to cause injury to others, most likely but not necessarily limited to persons using adjacent or neighboring land. Consequently, the power to legislate in the zoning field is limited in principle only as the power to legislate generally is limited. The City of Brecksville, as a charter municipality, may "adopt and enforce * * * such local police, sanitary and other similar regulations as are not in conflict with general laws." Section 3, Art. XVIII, Constitution. This in turn requires that any regulation bear a real and substantial relationship to the protection of the health, safety, morals, or general welfare of the community. *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 146 N. E. 2d 854; *Cleveland* v. *Antonio* (Cuyahoga Co. 1955), 100 Ohio App. 334, 124 N. E. 2d 846. Or, and close-

ly related, the regulation must not be arbitrary or artificial or capricious, i. e., classifications or distinctions drawn between permitted and prohibited conduct must be based on real and substantial distinctions. *Xenia* v. *Schmidt* (1920), 101 Ohio St. 437, 451-452, 130 N. E. 24. Further, as these cases indicate, a properly adopted legislative act is presumed to be valid, and may be set aside only if the contrary clearly appears.

Specifically, as applied in zoning cases,

"If the ordinance discloses no purpose to prevent some public evil * * * and has no real or substantial relation to public health, morals, and safety, it must be held void. When, however, legislation does have a real and substantial relation to the prevention of conditions detrimental to the public health, morals, or safety, no matter how unwise the measure seems to individual judges, it is not for the judicial tribunals to nullify it * * *." *Pritz* v. *Messer, supra* (112 Ohio St. 628), at 639.

To be sure it has sometimes been asserted that

"The benefit to the public health, safety, morals or general welfare from zoning use limitation must be sufficient to reasonably outweigh the loss to the landowner in order to justify zoning legislation causing such loss by limiting such owner's right to use his property." *Curtiss* v. *Cleveland, supra* (170 Ohio St. 127), at 127 and 132.

This does not mean that the trial court is to engage in some kind of quantitative balancing of public benefit against possible individual loss separate and apart from its determination that zoning legislation does or does not clearly bear a real or substantial relationship to the prevention of some public evil. In the three preceding paragraphs of the syllabus in *Curtiss*, the Supreme Court set out the general rules just discussed (170 Ohio St. 127).

To prevail, therefore, the appellee had to clearly establish, in substance, that the legislative body could not have reasonably believed the necessity of regulation in the public interest outweighed, qualitatively, the impact of the regulations imposed, i. e., that the ordinance clearly does

not bear a real and substantial relation to the public health, safety, morals or general welfare and is, in turn, unreasonable or arbitrary. In any event, there must be an actual and substantial loss of value, for without loss there can be no "taking."

On the other hand, as we have indicated, while loss of value is a factor, sometimes a very important factor, it is not sufficient to establish that zoning is unconstitutional as applied to a particular parcel of land. *Curtiss* v. *Cleveland, supra,* two cases (170 Ohio St. 127; 166 Ohio St. 509); see, also, *Cleveland Trust Co.* v. *Village of Brooklyn, supra* (92 Ohio App. 351), at 361-362. As just stated, it is incumbent upon the complainant to show that regulation is not, nevertheless, justifiable.

### III.

The evidence shows that the appellee cannot develop as large a subdivision on this particular land as he might be able to develop, *using his particular approach to land use and development,* on other terrain, more favorably situated. There is no evidence that his is the only approach that might be used or, specifically, that the development of a more expensive and less highly concentrated residential project, using only that part of the land which is best suited to the purpose, would not be economical. Against substantial and essentially uncontroverted testimony suggesting *that no high density development is feasible* on this particular land, the appellee has failed to show that any alternative scheme of development, such as whatever it is that he proposes to build if permitted to do so, is itself economically feasible.

Presumably the appellee would not have resorted to litigation unless he thought he might gain as a result. But his unexpressed "opinions" are not evidence; nor is much probative value to be found in the speculation of various witnesses that *perhaps* the very difficult problems associated with the terrain can be surmounted if enough money is spent on engineering and land improvement. In short, appellee failed to show that he has suffered any loss.

Far from showing that the zoning of this particular land was not related to the protection of the public peace, health, safety, or the general welfare of the community, substantial, uncontroverted, credible and apparently undisputed testimony (appellee concedes in his brief that there is no dispute as to the facts) indicated that: (1) soil conditions on this tract of land are unstable, (2) there is substantial risk of earth slides, which would be aggravated by extensive construction (accompanied by the necessary grading and clearing of the land), and (3) the area is subject to flooding and to heavy concentrations of fog. It also appears that the city officials were concerned about traffic problems because, in their opinion, among other reasons, existing roads would not be adequate, and it would be very difficult to build adequate roads, given the terrain and the problem of keeping the roads clear and usable in winter.

That the hazards involved are not mere abstract possibilities but substantial and immediate risks is dramatically illustrated by the testimony of Mr. John R. Courtney, Municipal Engineer:

"I was also on the property in the recent past because of a small landslide which affected portions of the sanitary sewer on Wiese Road. That was within the past few months.

"A section of the edge of the hill—it did not affect the pavement other than being very close to the pavement—slipped, and as a result ten or twenty feet of sanitary sewer was dislocated and the raw sewage was pouring over the hillside and into the creek at the bottom [,] and [it created] a rather difficult problem [of] repair * * *."

Unless we are to conclude that a municipality may properly consider the impact of zoning on present members of the community only, without regard to the protection of future residents or property owners, it is extremely difficult to see how these ordinances are not properly related to the peace, health, safety and general welfare of the community. Nor is it improper for city officials to as-

sume that the hazard increases in proportion to the density of population permitted.

If zoning ordinances are ordinarily adopted to promote the orderly and rational development of the community, building codes usually serve to protect residents of specific property by assuring safe building practices. But it by no means follows that the functions of the two do not overlap. Planning, generally speaking, embraces both. One may well serve the purposes of the other, especially where, as here, specific questions of safety and health must affect general community planning.

To be sure, with reference to the problems involved in road construction,

"* * * traffic regulation must remain a byproduct of zoning activities, and the primary product must always be to insure the greatest enjoyment of one's land, taking into account the rights of others and the needs of the community."

But as Judge Peck also noted:

"* * * from the point of view of zoning * * * the needs of the community as a whole must, as always, be paramount, and this court recognized the importance of traffic considerations in the recent case of" *State, ex rel. Associated Land & Investment Co.,* v. *Lyndhurst* 1958, (168 Ohio St. 289, 154 N. E. 2d 435). *State, ex rel. Killeen Realty Co.,* v. *East Cleveland* (1959), 169 Ohio St. 375, 386, 160 N. E. 2d 1.

We do not understand the *Killeen* case to require more than that traffic and road conditions be kept in proper perspective as a part of the total problem of zoning. A municipality may not use its zoning and wave the flag of traffic regulation to avoid the consequences of failure to provide adequate roads and municipal services. Where, as here, the physical difficulties imposed by the natural terrain may make it difficult if not impossible to provide roads which would be adequate, particularly in winter, we are confronted with a very different problem. It takes no great amount of imagination to recognize that when

the roads are blocked with snow and ice and stalled automobiles, emergency vehicles cannot get through. Compare, also, *Union Oil Co.* v. *Brook Park* (Cuyahoga Co. 1971), 26 Ohio App. 2d 153, 269 N. E. 2d 853.

The judgment of the Court of Common Pleas is reversed, and final judgment is entered for appellants.

*Judgment reversed.*

DAY, C. J., and WASSERMAN, J., concur.