The Kanter Corporation *v.* City of Forest Park.

[Cite as Kanter Corp. v. Forest Park (1977), 53 Ohio Misc. 4.]

(No. A-7600352—Decided July 13, 1977.)

Court of Common Pleas of Hamilton County.

*Mr. James W. Farrell, Jr.*, for plaintiff.
*Mr. Thomas C. Spraul*, for defendant.

Outcalt, J. This is a declaratory judgment action in which plaintiff seeks to have the court declare unconstitutional an ordinance of the city of Forest Park which restricts 84 acres of land owned by plaintiff to an R-2 residential use.

The general area in question was originally designated as the federal "Green Belt" area which was purchased by the Warner-Kanter Corporation. Warner-Kanter developed the area into a village known as Forest Park which was widely advertised as a "planned community."

After the village of Forest Park (now the city of Forest Park) was incorporated a comprehensive zoning plan was drawn up. This plan has been modified by the council of Forest Park from time to time but it was always contended that it maintained its original character of a so-called

planned community. After the area was partly developed, Mr. Marvin Warner, who is now the Ambassador of the United States to Switzerland, sold out his interest in the corporation, and it is now known as The Kanter Corporation. In recent years the city of Forest Park has had considerable growth and consists basically of single and multifamily units along with the necessary schools, shopping areas and businesses.

The land which is the subject of this litigation is an area of approximately 84 acres. The southwestern portion of this triangle can be described as the point where Mill Road, Kemper Road and Interstate Highway 275 converge. Actually, Kemper Road intersects Mill Road north of the intersection of Mill Road and I-275 and there is a small triangle of land between these three roads. The land in question starts at the intersection of Mill Road and I-275 and proceeds along Mill Road in a northerly direction for about 2,000 feet. It then runs in an easterly direction approximately 3,700 feet to I-275 and then proceeds in a southwesterly direction along I-275 approximately 4,000 feet to the place of beginning. As hereinbefore indicated this triangle of land consists of about 84 acres. The western and northern sides of the triangle represent the corporate limits of Forest Park and the area to the north and west is a part of Springfield Township generally known as the Pleasant Run Farms area. To the southeast on the other side of I-275 is the remainder of the city of Forest Park. Although I-275 separates the area in question from the rest of Forest Park, access to the area from the rest of Forest Park is possible over either Kemper Road or Mill Road.

For a considerable period of time the area in question was zoned R-2, for residential use only. In the latter part of 1975 the plaintiff Kanter Corporation sought to have approximately 74 acres of this land rezoned to R-PUD-14 (Planned Unit Development) and the remainder of the land at the southwest corner to be rezoned to permit the building of a neighborhood shopping center serviced by Mill and Kemper Roads.

Planned unit development is sometimes referred to as

multiple zoning and permits construction of a variety of housing units ranging from single family dwellings to condominiums and large apartment buildings.

At its regular meeting in September of 1975 the city council passed the zoning change to R-PUD-14, but tabled indefinitely the proposal for the shopping center. Subsequent to that action known as "Ordinance No. 58-1975" the citizens of Forest Park circulated petitions to have a referendum put on the ballot at the November election.

After the aforesaid petitions were circulated, the city council at a meeting in October 1975 rejected the proposal for the shopping center.

The language of the referendum at the November election read as follows:

"Shall Ordinance No. 58-1975 of the City of Forest Park, Ohio, entitled 'Rezoning Land East of Mill Road And North of Kemper Road From R-2 (Residential) To R-PUD-14 (Planned Unit Development),' be approved?"

This issue was on the ballot for the entire city of Forest Park, and the citizens of Forest Park rejected the R-PUD-14 zoning by a margin of nearly 70 percent.

The declaratory judgment action was tried before the court from February 28 through March 2, 1977, during which time plaintiff presented testimony from five witnesses and the defendant presented testimony from a similar number of witnesses. Plaintiff had one rebuttal witness. In brief summary, the plaintiff presented testimony that the shopping center was a necessity for the community, that the land was much better suited for R-PUD-14 than it was for R-2, that the R-PUD-14 zoning would produce an attractive addition to the community, and that there is a surplus of single family dwellings in Forest Park. In particular, plaintiff presented testimony that the shopping center would increase the value of the 10 acres used for that purpose and the R-PUD-14 zoning would considerably increase the value of the remaining 74 acres. As a matter of fact, one Harry Oelerich, an expert real estate appraiser, testified that if the court ordered both zoning changes requested by plaintiffs, the value of the property would be

increased from \$3,925 an acre to \$13,191 an acre. This would be an increase for the entire 84 acres from \$329,700 to \$1,108,044. This indicates that the value of Kanter's land would increase by over three-quarter of a million dollars, to wit, \$778,344. The defendant offered no evidence to directly contradict these estimates.

The defendant offered evidence which could be summarized briefly as follows: The proposed shopping center would create a traffic hazard and other problems. The land could be better used for residential purposes and the proposed development would not be attractive. Furthermore, it contended that such a radical change was inconsistent with the planned community image of Forest Park. It contended that the foregoing indicated that keeping the 84 acres as R-2 property was a better use of the land and that the action of the city council in rejecting the shopping center and of the voters rejecting the R-PUD-14 zoning for the rest of the property was proper.

After the hearing in court, both parties requested an opportunity to brief the court on the law but requested that they receive a transcript of the hearing before filing their briefs. Due to the time necessary to have a transcript of 284 pages prepared, followed by the plaintiff's brief, defendant's brief and plaintiff's reply brief, this matter was not submitted to the court for decision until the latter part of June.

The court is of the opinion that the defendant should prevail and the plaintiff should be denied the declaratory judgment requested.

Both parties agree that the recent decision of the United States Supreme Court in *Eastlake* v. *Forest City Enterprises* (1976), 426 U. S. 668, is applicable here. That case sets out the principle that the same standard applies for overturning a referendum decision on zoning as exists for overturning a legislative zoning decision.

That standard was set out by the Supreme Court in *Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365. *Euclid* stands for the proposition that all zoning ordinances "must find their justification in some aspect of the police power,

asserted for the public welfare." (*Euclid*, at page 387.) Before such ordinance can be declared unconstitutional it must be shown that such ordinance is "clearly arbitrary and unreasonable." (*Euclid*, at page 395.)

The critical question before this court is whether the failure to rezone the plaintiff's property was a valid exercise of the police power and whether such failure is clearly arbitrary and unreasonable.

Plaintiff contends, and defendant concedes, that a rezoning would substantially increase the value of plaintiff's land. The current zoning damages the plaintiff's property by over three quarters of a million dollars or about 70 percent. This amount of damages is not contested by defendant.

But while this economic damage is a factor for this court to consider, it is not dispositive of the issue. A mere decrease in value of the subject property is insufficient to invalidate a zoning ordinance. *Eastlake* v. *Forest City Enterprises, supra.* Indeed, in the *Euclid* case the owner was deprived of approximately 75 percent of the economic value of his land.

The plaintiff also contends that the use he intends to make of the subject property is a reasonable use. Again this is a proper factor to consider, but it is not critical. The burden is on the plaintiff to show that the ordinance is unreasonable, not that his intended use is reasonable. The plaintiff's use of his property may well be fairly reasonable if it is not a nuisance, but still subject to the police powers of the state as embodied in its zoning ordinances. That the intended use is reasonable is only a factor in determining whether a refusal to permit such use is arbitrary and unreasonable.

The plaintiff also urges that the failure to rezone went beyond the legitimate exercise of the police power in that it exceeded the requirements of public necessity. "There must be an essential public need for the exercise of the power in order to justify its use." *Youngstown* v. *Kahn Bros. Building Co.* (1925), 112 Ohio St. 654, 661.

The plaintiff wants the court to engage in a balancing

test to see whether "the benefit from zoning use limitations to the public health, safety, morals or general welfare * * * outweigh[s] the loss to the landowner * * *." *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127, 132.

The city has asserted that a rezoning of plaintiff's property would not be in the best interests of Forest Park. It stresses that since its inception it has held itself out as a "planned community" and that its residents have relied over the years on the city being a planned community.

The city is concerned with the appearance of stability and the attracting of desirable home buyers to its community.

It further says that an added shopping center is not needed or wanted and that it would contribute not only to more traffic, but to a greater congestion by people from outside Forest Park coming in to use the center.

It is concerned that there is already a PUD project in Forest Park that is not fully developed. In fact the evidence indicated that this PUD zone consists of approximately 200 acres immediately to the south of I-275 directly opposite the triangular area in this controversy. Nothing has been done to develop this area. The city is concerned about the possibility of another undeveloped PUD.

If the plaintiff's project were not to succeed it would hardly be unnoticeable, or "isolated" as the plaintiff contends merely because I-275 forms a buffer. Indeed, elsewhere the plaintiff urges the desirability of the shopping center and the PUD because of its positive benefits on the city. The plaintiff cannot have it both ways. In short, if there is another PUD failure the legitimate concern of the city is that it would detrimentally affect the whole community.

The city has advanced reasons for its failure to rezone which when placed in balance against the plaintiff's economic loss do outweigh such injury, although a balancing test is impossible of precision. The public health, safety and morals cannot be weighed in dollars and cents. The calculation is much more subtle. It is difficult to balance the appearance of a stable, healthy community against the

reality of an economic loss of three quarters of a million dollars.

These above principles apply to the entire tract of the subject property, both the 10 acres the plaintiff seeks to use for a shopping center and the remaining 74 acres on which it seeks to develop a PUD.

The people's voice as expressed by their representatives in council and in the referendum amounts to a clear rejection of the plaintiff's intended uses for the entire tract.

The city's legitimate concern is with the concept of Forest Park as a community. A community is a group of people joined together by a common character or identity. It is the identity of Forest Park as a stable, healthy, planned community that its people seek to preserve. Such a vision includes neither another shopping center nor another PUD. Neither one is desired and either or both would have an adverse effect on the public health, safety and welfare. The city council and the people of Forest Park have clearly indicated their belief in the foregoing.

This court cannot say that the failure to rezone is clearly arbitrary and unreasonable. A presumption exists that the legislation is not unreasonable or arbitrary and the legislation will not be disturbed unless the legislative judgment is proved to be clearly erroneous. *Curtiss* v. *Cleveland, supra*, at page 130.

The plaintiff has not overcome that presumption. Even at best the plaintiff has shown the failure to rezone to be "fairly debatable." And if the validity of the ordinance for zoning purposes is "fairly debatable, the legislative judgment must be allowed to control." *Euclid* v. *Ambler Realty, supra*, at page 388.

This court cannot say that the action of council or the referendum, representing an overwhelming majority of the vote, is so clearly arbitrary or unreasonable that the failure to rezone is unconstitutional.

Accordingly, plaintiff's action for declaratory judgment is dismissed.

*Cause dismissed.*