MINTZ ET AL., APPELLEES, *v.* VILLAGE OF PEPPER PIKE ET AL., APPELLANTS.

[Cite as Mintz v. Pepper Pike (1978), 57 Ohio App. 2d 185.]

(No. 38256—Decided June 22, 1978.)

Mr. James P. Murphy, for appellees.
Mr. Robert L. Musser and Mr. Charles T. Riehl, for appellants.

PRYATEL, J.   This is an appeal from a declaratory judgment which decreed that ''the present zoning of plaintiff's property,'' located in the Village of Pepper Pike, ''which prohibits the building by plaintiff of an office building is declared unconstitutional as it has no relationship to public health, safety, morals or welfare.''

The parcel in question is located on Lander Road near the traffic circle close to the southernmost boundary of the Village of Pepper Pike.

Streets extend from Lander Circle like five spokes from the hub of a wheel. Lander Road extends both north and south of the circle. Chagrin Boulevard extends west and southeast from the circle while Pinetree Road extends east from the circle.

A map of the Village of Pepper Pike submitted as an exhibit at trial outlines the zones.[1]

Four of the five wedge-shaped corner lots formed by these streets are zoned and have been developed primarily for "Class U-4; Retail Business" use, forming the only area in the village so zoned and developed.

According to the map, beginning at the center of Lander Circle and extending eastwardly approximately 1,500 feet, the north side of Chagrin Boulevard not zoned for retail use (at Lander Circle) is zoned for ''U-3; Office Building'' use. In addition, about 1,500 feet west of Lander Circle and extending approximately another 1,300 feet westwardly, the north side of Chagrin Boulevard is zoned for "U-3; Office Building" use. Other than two stretches along Chagrin Boulevard, west and southeast of Lander

---

[1]Ordinance 1963-59 of the Village of Pepper Pike, as amended, establishes four classes of Use Districts, more particularly identified and defined as (a) Class U-1 Uses; Single Family Dwellings, (b) Class U-2 Uses; Public Buildings, (c) Class U-3 Uses; Office Buildings, and (d) Class U-4 Uses; Retail Business.

Circle, there is no land zoned for office building use in the village.

The remainder of the land in Pepper Pike is zoned primarily for single family dwellings (U-1), except for some public buildings (U-2) such as churches, schools, and country clubs.

The parcel in question is one of the few single family residential lots in Pepper Pike adjacent on one side to retail property and on the other side, to a private residence. It is an undeveloped parcel approximately 77,560 square feet, fronting 280 feet on the west side of Lander Road just north of Lander Circle. It is between a retail corner lot to the south (on the corner of Lander Road and Chagrin Boulevard) and a single family residential corner lot to the north (on the corner of Lander Road and Bryce Road). The lots on either side have been developed as zoned, the former (south) with a gasoline station and the latter (north) with a single family residence. Approximately 25 feet of the northern frontage on Lander Road faces property across the street which is also zoned for single family residential use. The remainder of the 280 feet of frontage on Lander Road faces a portion of a shopping center.

To the west, behind the parcel in question and behind the corner lots on either side of it, is an area about six times their size, bounded by Bryce Road to the north and Chagrin Boulevard to the south. It is zoned for public building use (U-2) and has been partially developed by the Cleveland Racquet Club. However, the area immediately adjacent to the lot line of the parcel in question has not been improved.

Appellee Alexander Mintz purchased the parcel in December, 1968, when it was zoned for single family dwellings. On May 6, 1970, the Pepper Pike council rezoned a substantial part of it to office building use (U-3), but before the change became final, the villagers, by referendum on November 3, 1970, restored the property to residential use (U-1).

On May 24, 1971, former plaintiff Lester Sensibello

obtained from Alexander Mintz a written option to purchase the parcel. On July 7, 1971, plaintiffs Sensibello and Mintz filed a complaint in the Common Pleas Court of Cuyahoga County seeking a declaratory judgment to have the present zoning declared unconstitutional and to obtain an order that the parcel could be developed with an office building (U-3), in effect to overturn the referendum.

On April 19, 1974 (with leave of court) plaintiffs amended their complaint, substituting for Lester Sensibello new plaintiffs, Roger D. Ritley and Alan R. Daus, who apparently were assigned options to purchase. Moreover, the amended complaint also changed the prayer for relief, now seeking to develop the parcel for retail use (U-4) rather than office building use (U-3). The amended complaint states:

"Unless plaintiffs are permitted to use and occupy the premises in the manner permitted in a Class U-4 Use District, plaintiffs will be deprived of the reasonable use of the premises, and their property will be confiscated without due process of law."

At trial, one of the plaintiffs, Roger D. Ritley,[2] without objection from the village, was offered as an expert in real estate appraisal, consulting and planning.

Mr. Ritley described the zoning of the property:

"A. The zoning on the majority of the property is U-1 single-family residential. There is a very [sic] small triangle at the extreme southeast corner of this property which is zoned U-4.[3] For all practical purposes that zon-

---

[2] A co-beneficiary of the property at issue as well as a co-owner of the adjacent residential property (north).

[3] In his opening statement, the village's attorney had described why a small corner of the parcel was zoned for retail use:

"Mr. Musser: The defendant's position in this zoning question is that the property owner, Mr. Mintz, acquired this property in two different parcels. He acquired the southerly 80 by 280 feet which was not a building lot, but was surplus property to the Standard Oil Company of Ohio, which company has a service station at that corner of Lander Circle. The owner has combined those two parcels and wanted the best of the bargain to obtain zoning for office building use on the whole property zoned as you have already heard Mr. Murphy

ing does not allow development under that use classification." * * *

"Q. Mr. Ritley, do you have any interest in the property?" * * *

"A. I'm a beneficiary of a trust, Elinore Daus is the trustee. She and I are the sole beneficiaries of that trust." * * *

"Q. Mr. Ritley, based on your testimony and your appraisal report, do you as an expert real estate appraiser have an opinion as to the highest and best use of this property"* * *

"A. It is my opinion the site can be most economically developed out of all the range of uses to which it might be put as an office building."

Mr. Ritley testified that the value of the property as zoned (U-1) is $11,000 and its value as he proposed to develop it (U-3) is $165,000.

Mr. Ritley justified these conclusions by his study of the sales of comparable property in the area and other market data. He stated (albeit hearsay) that he had received offers of $165,000 for the property from two developers of retail and office space although neither of them testified.

The testimony of Mr. Ritley was substantially corroborated by a second expert witness not a party to the action, Mr. Charles Braman.

Further, Mr. Ritley described his plan of development[4] to the effect that it would be screened and shielded from the residential lot owned by himself and plaintiff, Alan Daus, to the north of the parcel.

After the plaintiffs rested, the attorney for the appellant was of the belief that "all the essential facts * * * have come out and further testimony is not necessary."

---

describe it. Whereas only a very small portion of the southerly fragmented parcel is zoned other than U-1 residential at this time, or ever has been."

[4]He conceded that there was none on file with the Village, and that the one he proposed, provided for parking and/or driveways to the southerly and westerly boundaries which the Village Code does not permit.

The trial court ruled that the present zoning ordinance was unconstitutional as applied to the property, and fashioned a detailed order in conformity with the use proposed at trial. The order permits the appellees to develop the property in conformity with the village's zoning regulations pertaining to U-3 use districts (rather than U-4 as prayed for in the amended complaint) and orders their proposed deed restrictions in their residential lot to the north of the parcel in question.

On appeal, the village presents the following single assignment of error for our review:

"1. This trial court erred when, presented with evidence that the property in question could be developed under the existing zoning (although at less profit than the property owner's proposed use) it substituted its judgment for the judgment of the duly elected officials and the electorate of the Village of Pepper Pike as to the most appropriate development of the subject parcel, taking into consideration the health, safety and welfare of the community."

This assignment of error is well taken.

Admittedly, the governmental power to interfere by zoning regulations with the general rights of the landowner, by restricting the character of his use, is not unlimited. The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that zoning regulations must bear a substantial relation to the public health, safety, morals and general welfare. *Nectow* v. *Cambridge* (1928), 277 U. S. 183.

Furthermore, the restrictions placed on land use legislation by the Fourteenth Amendment apply with equal force whether the legislation is enacted by a legislative body or through a referendum of the voters. *See, Eastlake* v. *Forest City Enterprises* (1976), 426 U. S. 668; *see, e.g., Kanter Corp.* v. *Forest Park* (1977), 53 Ohio Misc. 4, at 7. Applying the restrictions of the Fourteenth Amendment's Equal Protection Clause to fair housing legislation of the City of Akron, Ohio, the United States Supreme Court held:

"* * * [I]nsisting that a State may distribute legisla-

tive power as it desires and that the people may retain for themselves the power over certain subjects may generally be true, but these principles furnish no justification for a legislative structure which otherwise would violate the Fourteenth Amendment. Nor does the implementation of this change through popular referendum immunize it. *Lucas* v. *Colorado General Assembly*, 377 U. S. 713, 736-737; 12 L. Ed. 2d 632, 647, 648, 84 S. Ct. 1459 (1964). *The sovereignty of the people is itself subject to those constitutional limitations which have been duly adopted and remain unrepealed.*" (Emphasis added.) *Hunter* v. *Erickson* (1969), 393 U. S. 385, at 392.

Thus, the zoning ordinance involved in the present case, restored by referendum, is subject to the same constitutional test as an ordinance enacted by the village council.

The test to be applied by the courts in determining whether a zoning ordinance violates due process guarantees was established in *Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365, at 395.

"* * * [I]t must be said before the ordinance can be declared unconstitutional, that such provisions are *clearly* arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." (Emphasis added.)

When subjected to this constitutional test, a zoning ordinance, like any properly enacted legislation, is entitled to a presumption of validity; the burden of removing that presumption is on the party challenging it. *Gray* v. *Trustees, Monclova Township* (1974), 38 Ohio St. 2d 310; *Willott* v. *Beachwood* (1964), 175 Ohio St. 557; *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127; *Alsenas* v. *Brecksville* (1972), 29 Ohio App. 2d 255.

The degree of proof required to overcome the presumption of validity varies from state to state. Expressing the degrees from the highest to the lowest, courts have required, (1) proof beyond a reasonable doubt, (2) evidence sufficient to take the matter of reasonableness beyond the reach of fair debate, (3) clear and affirmative evidence, (4) clear

and convincing evidence, or (5) a preponderance of the evidence. 1 R. Anderson, American Law of Zoning 111, Section 3.16 (2d ed. 1976).

The Supreme Court of Ohio requires a litigant to produce evidence sufficient to take the matter of reasonableness beyond the reach of fair debate, *Mobil Oil* v. *Rocky River* (1974), 38 Ohio St. 2d 23 (*per curiam*). This requirement reflects a policy of judicial restraint in the area of zoning litigation, as expressed by the court in *Willott* v. *Beachwood, supra*, at 559-560:

"The power of the court in such matters as this is extremely limited, and the court can not usurp the legislative function by substituting its judgment for that of the council. Municipal governing bodies are better qualified, because of their knowledge of the situation, to act upon these matters than are the courts.

"The determination of the question of whether regulations prescribed by a zoning ordinance have a real or substantial relation to the public health, safety, morals or general welfare is committed, in the first instance, to the judgment and discretion of the legislative body. Where such a judgment deals with the control of traffic, volume of traffic, burden of traffic, effect upon valuation of property, municipal revenue to be produced for the city, expense of the improvement, land use consistent with the general welfare and development of the community as a whole, or, in short, where the judgment is concerned with what is beneficial or detrimental to good community planning, it is in the first instance a legislative and not a judicial matter. The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations, and *the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable.*" (Emphasis added.)

Accordingly, in the case of *Mobil Oil* v. *Rocky River, supra,* the Ohio Supreme Court reinstated a zoning ordinance found unconstitutional by this court, and quoted with approval the Cuyahoga County Court of Common Pleas as follows:

"* * * The wisdom of whether the comprehensive zoning ordinance of Rocky River should permit the installation of a gasoline service station at the southeast corner at Spencer and Center Ridge Road is, at most, under the facts presented herein, *a fairly debatable one* and it cannot be seriously contended here that its action [that of the zoning ordinance] was so arbitrary, confiscatory and unreasonable so as to be in violation of constitutional rights." (Emphasis added.) *Id.,* at 30.

Indeed, to prevail, this court has concluded that a litigant must:

"*clearly establish,* in substance, that the legislative body could not have reasonably believed the necessity of regulation in the public interest outweighed, qualitatively, the impact of the regulations imposed, *i.e.,* that the ordinance *clearly* does not bear a real and substantial relation to the public health, safety, morals or general welfare and is, in turn, unreasonable or arbitrary." (Emphasis added.) *Alsenas* v. *City of Brecksville, supra,* at 260-61.

Consequently, the trial court must not:

"* * * *engage in some kind of quantitative balancing* of public benefit against possible individual loss separate and apart from its determintion that zoning legislation does or does not clearly bear a real or substantial relationship to the prevention of some public evil." (Emphasis added.) *Alsenas* v. *City of Brecksville, supra,* at 260.

Rather, the trial court must determine whether the issue of reasonableness clearly has been removed from the realm of such fair debate. *Partain* v. *Brooklyn* (1956), 101 Ohio App. 279; *Cleveland Trust Co.* v. *Brooklyn* (1952), 92 Ohio App. 351, *appeal dismissed* (1952), 158 Ohio St. 258.

In the present case, the appellees presented evidence that the neighborhood to the south, to the west and across the street from their parcel was used for public buildings, office buildings or retail businesses. Mr. Ritley testified that two of those buildings, a bank and an office building complex, had been constructed since the November 1970 referendum, and that the Cleveland

Racquet Club "had not been opened as of that date." In *Standard Oil Company* v. *Warrensville Heights* (1976), 48 Ohio App. 2d 1, this court held that where *all* of the property surrounding a lot had changed in character to commercial use, and the zoning of the property under attack was still for single family use, the single family zoning was unconstitutional. This court held similarly, in *Pure Oil* v. *Brook Park* (1971), 26 Ohio App. 2d 153, that where the property at issue could "only be used commercially, any restrictions inconsistent with that conclusion would deprive appellants of the best use of their property, without due process of law." In the present case, however, the appellees' property was not "all surrounded by commercial property," nor could the land be used "only commercially." Indeed, Mr. Ritley, the owner and developer (upon cross-examination), was questioned and replied, as follows:

"Q. Adjacent to this house opposite the subject side is there a residential street?

"A. Do you mean one that would be contiguous with this property, this single-family residence we were just discussing?

"Q. The one opposite your parcel, yes.

"A. That would be Summit Lane.

"Q. Yes, and is that a developed street?

"A. Yes, it is." * * *

"Q. Would you accept the statement if I told you that there were 23 lots and it was developed with 23 houses?

"A. Based on my field observation I wouldn't have any reason to question that statement."

There was no evidence presented that their parcel was useless as zoned. Nor did the trial judge conclude that the parcel could not be used as zoned for single family dwellings.

The plaintiffs' evidence that an office building would be the "highest and best" use of their parcel, in planning and development terms, is likewise a relevant but not the controlling factor. *State, ex rel. Beerman,* v. *Kettering* (1963), 120 Ohio App. 309. We do not overlook the testi-

mony that the parcel would increase more than ten times; in value if rezoned for office building use (U-3). Indeed, in the case of *In re Ordinance to Rezone* (1962), 89 Ohio Law Abs. 430, the fact that the property in question would increase in value ten-fold if developed with a gasoline station was a factor in the court's decision that the ordinance zoning it residential was unreasonable. However, the case did not turn on the potential increase in value. The court relied on the change in the neighborhood which had developed a heavily commercial character, and on the fact that the intersection at which the property was located had become increasingly burdened with traffic.

The appellees assert that the facts proved by their. exhibits and testimony, together if not individually, overcome the presumption of validity to which the ordinance is entitled. They contend that since the appellant presented no witnesses, their evidence entitles them to the decree. See *Grant* v. *Washington Township* (1963), 1 Ohio App. 2d 84, at 87.

While we appreciate the appellees' position, we are nonetheless called upon to determine whether they have met their burden, to wit: that the issue was clearly beyond the reach of fair debate. We therefore consider *all* relevant factors as we study the evidence from the trial, mindful of the Ohio Supreme Court's admonition that restraint be exercised in this area.

In so doing, we note that the neighborhood to the north of the appellees' parcel, and to the north of Lander Circle in general, is as exclusively residential as the neighborhood to the south is retail.

We are also aware that although there has been considerable development in the general area, such as a supermarket, shops, dress stores and ancillary shopping facilities, much of the development has taken place in neighboring municipalities. Furthermore, the development in Pepper Pike was constructed within the framework of the zoning classifications. That the region develops as zoned is hardly a reason to change another area from residential to office use and thus encourage an over-intensive develop-

ment, particularly where there are other sections already classified for office use.

The problem here is not that the appellees are denied a site for an office building on land zoned for office use, but rather that they seek to build an office building where only residences are permitted.

Appellee emphasizes that heavy financial loss will be sustained if the residence classification is not changed to office use.

As we see it, the appellees were aware of the zoning classification and what the market would bear when they purchased the property zoned for residential use. Appellees are seasoned planners well versed in land purchases who cannot now be heard to complain because the villagers voted to keep the land residential. We believe that the vote of the citizens did not prohibit a profit; rather, it curtailed a more generous one.

Although the Supreme Court of Ohio has not discussed this factor in its zoning decisions, we find that the highest courts of other states share the view that where land is purchased in one zoning classification with the hope of changing its classification to a more profitable one, the failure to obtain the change cannot be urged against the validity of the ordinance. *City of Howell* v. *Kaal* (1954), 341 Mich. 585, 67 N. W. 2d 704; *State, ex rel, Howard,* v. *Roseville* (1955), 244 Minn. 343, 70 N. W. 2d 404; *Lapkus Builders, Inc.* v. *Chicago* (1964), 30 Ill. 2d 304, 196 N. E. 2d 682.

*Lapkus Builders, Inc.* v. *Chicago, supra,* involved a situation similar to the present case, which was resolved as follows by the Illinois Supreme Court:

"While the price of the property purchased by plaintiff was concededly greater than its value for the uses permitted by the ordinance, this fact has little, if any, significance under the circumstances here present. Plaintiff's president is an experienced buyer and builder, both for speculative purposes and otherwise, and is familiar with the area. He testified he did not know of the R-3 zoning, but his failure to inform himself thereon is of no assistance here where such information was readily available.

*Purchasers who acquire property with the expectation of using it for a purpose not permissible under current zoning restrictions should not expect loss resulting from denial of the proposed use to be a persuasive argument in securing the change. Cities Service Oil Co. v. County of Lake, 26 Ill. 2d 176; Vedovell v. City of Northlake, 22 Ill. 2d 611.*

"In our judgment the plaintiff's evidence fails to overcome the presumptive validity of the ordinance. At best it produces no more than a debatable question upon which the legislative judgment is conclusive. *Elmhurst Nat. Bank* v. *City of Chicago*, 22 Ill. 2d 396." (Emphasis added.) 30 Ill. 2d at 310.

In the present case, as in *Lapkus Builders, Inc.*, v. *Chicago, supra,* we find the appellees' claim of financial loss is more accurately described as the denial of a windfall. As we have pointed out, the record reveals that the appellees' interests were obtained while the parcel was zoned residential, and that Mr. Ritley by his own testimony is a highly qualified professional in the business of real estate speculation and development, who is familiar with the area. We hold that appellees who exercised their options on the property must be content to use the property for the residential purpose that existed when they purchased it.

Taking all of the relevant factors and circumstances into account, we conclude that the appellees failed to establish *beyond fair debate* that the ordinance was *clearly* arbitrary and unreasonable, having no relation to public health, safety, morals, or general welfare. In short, it is both fairly and clearly debatable whether the ordinance is arbitrary and unreasonable. Under these conditions, the outcome of the referendum is rendered conclusive.

The judgment of the Common Pleas Court is reversed and remanded.

*Judgment reversed and cause remanded.*

CORRIGAN, C. J., concurs.
KRUPANSKY, J., concurs in the judgment only.